**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZAYRA TORRES SANCHEZ, | ) Case No. CV 26-5063 FMO (KES) |
| Petitioner, | ) |
| v. | ) **ORDER RE: MOTION FOR PRELIMINARY** |
| ERNESTO SANTACRUZ, <u>et</u> <u>al.</u>, | ) **INJUNCTION** |
| Respondents. | ) |

On May 11, 2026, Zayra Torres Sanchez ("petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against Ernesto Santacruz Jr., Acting Director of the Los Angeles Immigration and Customs Enforcement ("ICE") Field Office; Todd Lyons, Acting Director of ICE; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General of the United States (collectively, "respondents"). (<u>See</u> Dkt. 1, Petition at ¶¶ 23-26). Petitioner also filed a Motion for Temporary Restraining Order ("TRO"), seeking her immediate release and an order enjoining respondents from re-detaining her or imposing additional monitoring requirements without prior notice and a hearing. (<u>See</u> Dkt. 2, TRO at ECF 43); (Dkt. 2-1, Proposed Order at ECF 2). Because the standards for granting a TRO and a preliminary injunction are the same, <u>see</u> <u>Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.</u>, 240 F.3d 832, 839 n. 7 (9th Cir. 2001), the court converted petitioner's TRO to a motion for a preliminary injunction ("PI Motion"). (<u>See</u> Dkt. 9, Court's Order of May 11,

2026, at 1).  Having reviewed and considered all the briefing filed with respect to petitioner's PI Motion, the court finds that oral argument is not necessary to resolve the PI Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

Petitioner entered the United States with her mother at the age of two after fleeing her biological father's abuse.  (See Dkt. 1, Petition at ¶ 27).  Petitioner was then abused by her stepfather beginning at the age of four.  (See id. at ¶ 28).  When she was 12 years old, petitioner reported the abuse to authorities and applied for and was granted a U visa for victims of crime.  (See id.).  Petitioner later adjusted her status and became a legal permanent resident ("LPR").  (See id.).

Petitioner continued to suffer abuse from her stepfather and two intimate partners, and later experienced sexual abuse while serving a federal prison sentence at FCI Dublin.  (See Dkt. 1, Petition at ¶¶ 29-32).  Petitioner is one of approximately one hundred class members who brought a lawsuit against the Bureau of Prisons seeking damages for the abuse they suffered at FCI Dublin.  (See id. at ¶ 33).  Petitioner also became an advocate for immigrant survivors of prison violence and abuse.  (See id.).  She testified before Congress and other government officials and shared her experiences with the press.  (See id.).

Upon her release from prison in October 2022, petitioner was immediately taken into ICE custody, placed into removal proceedings, and transferred to the Northwest Detention Center ("NWDC") in Tacoma, Washington.  (See Dkt. 1, Petition at ¶ 34).  Petitioner was detained in NWDC for nearly two years.  (See id.).  On July 16, 2024, an immigration judge ordered petitioner removed.  (See id. at ¶ 36); (Dkt. 1-1, Declaration of Susan Beaty ("Beaty Decl.") at ¶ 18).  Petitioner's LPR status was subsequently revoked and she became eligible to apply for a new U visa.  (See Dkt. 1, Petition at ¶ 36).  Petitioner submitted her U visa application and requested a stay of removal.  (See id.).  A few days later, ICE granted petitioner a stay of removal based on her pending U visa application and released her from custody on August 14, 2024, pursuant to an Order of Supervision.  (See id.); (Dkt. 1-1, Exh. B, Order of Supervision at ECF 15-16).  In

December 2024, ICE abruptly changed the terms of petitioner's Order of Supervision by enrolling her in the Intensive Supervision Appearances Program ("ISAP"). (See Dkt. 1-1, Beaty Decl. at ¶ 24). Through ISAP, petitioner is subject to monthly in-person check-ins, home visits, and photo checks. (See id.).

Since her release from ICE custody, petitioner has reunited with her family and serves as the primary caregiver for her two daughters and her disabled mother. (See Dkt. 1, Petition at ¶ 38). Petitioner is also training to be a paramedic, and is involved with the California Coalition for Women Prisoners and the Dublin Prison Solidarity Coalition. (See id. at ¶ 39). She has fully complied with the terms of her Order of Supervision, including attending all regularly scheduled ICE and ISAP check-ins. (See id. at ¶ 40).

Petitioner's last check-in was on May 4, 2026. (See Dkt. 1, Petition at ¶ 41); (Dkt. 1-1, Beaty Decl. at ¶ 27). She was instructed to return in person on June 1, 2026. (See Dkt. 1, Petition at ¶ 41). However, at around 11:00 a.m. on May 11, 2026, just a few hours after petitioner had submitted her latest photo check to ISAP at 8:00 a.m., petitioner received a phone call from an ISAP officer instructing her to report to ICE later that day because ICE had "made some updates to her case." (See Dkt. 1-1, Beaty Decl. at ¶¶ 27 & 29) (internal quotation marks omitted). When petitioner asked the ISAP officer what changes had been made and why she was required to appear in person, the officer responded that she "can't share any more information over the phone." (See id. at ¶ 29) (internal quotation marks omitted). Fearing that petitioner would be detained without further notice at her check-in, petitioner's counsel filed the instant Petition and PI Motion. (See Dkt. 10, Supplemental Declaration of Susan Beaty ("Beaty Supp. Decl.") at ¶ 11). Petitioner's counsel also contacted the U.S. Attorney's Office for the Central District of California to seek assurance that ICE would not detain petitioner during her check-in but did not receive a response. (See Dkt. 1-1, Beaty Decl. at ¶¶ 33-34).

Although petitioner's ankle monitor had been removed just a few weeks earlier, (see Dkt. 15, Reply at 4), ICE placed a new ankle monitor on petitioner at the May 11, 2026, check-in. (See Dkt. 10, Beaty Supp. Decl. at ¶ 8). ICE also increased her reporting requirements to two in-person check-ins, two home visits, and two photo check-ins every month. (See id.). When petitioner

asked why her check-ins were being increased, an ICE officer informed her that it was due to a "change in ICE's system[.]"  (See id. at ¶ 9).

Petitioner asserts the following claims:  (1) violations of substantive and procedural due process under the Fifth Amendment's Due Process Clause; (2) violation of respondents' statutory authority under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6); and (3) violation of respondents' statutory authority under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.  (See Dkt. 1, Petition at ¶¶ 130-50).

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions and TROs.  See Fed. R. Civ. P. 65(a) & (b).  The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction.  Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)).  The standards for a TRO and a preliminary injunction are the same.  See Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7; NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same).  "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that:  (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest.  Winter, 555 U.S. at 20, 129 S.Ct. at 374.  Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127,

4

1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

**DISCUSSION**

I.      JURISDICTION.

Respondents contend that the court lacks jurisdiction because petitioner is not in immigration detention.[1] (See Dkt. 14, Respondents' Opposition to PI Motion ("Opp.") at 2) ("Because Petitioner is not in immigration detention, there is no relief for this Court to provide prophylactically on account of any speculative detention at some indeterminate point in the future."). "A court may grant habeas corpus relief to any individual in custody in violation of the Constitution or laws or treaties of the United States[.]" Sun v. Santacruz, 2025 WL 2730235, *3 (C.D. Cal. 2025) (internal quotations omitted); see 28 U.S.C. § 2241(c)(3). "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" Ortega v. Bonnar, 415 F.Supp.3d 963, 968 (N.D. Cal. 2019); see Preiser v. Rodriguez, 411 U.S. 475, 487, 93 S.Ct. 1827, 1835 (1973) ("[H]abeas corpus relief is not limited to immediate release from illegal custody, but . . . the writ is available as well to attack future confinement and obtain future releases."). Given petitioner's Order of Supervision and the fact that she is subject to several restraints to which the general public is not, the court is persuaded that petitioner is in custody within the meaning of 28 U.S.C. § 2241. See, e.g., Sun, 2025 WL 2730235, at *3 (finding petitioner in custody for the purposes of federal habeas corpus jurisdiction where conditions of release "significantly confine[d] and restrain[ed] [petitioner's] freedom"); Harrington v. Albarran, 2026 WL

---

[1] Respondents cite the court's order in Hernandez Trujillo v. Janecka, 2026 WL 84314, *1 (C.D. Cal. 2026), as authority that this case is not ripe. (See Dkt. 14, Opp. at 2-3). But in Hernandez Trujillo, petitioner was challenging his extended detention awaiting removal under Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001), which became moot once the court ordered his release under 8 U.S.C. § 1231(a)(3). Here, unlike Hernandez Trujillo, petitioner is not challenging her extended detention but rather the possibility of re-detention without the required procedural safeguards.

800113, *4 (N.D. Cal. 2026) (same); Ayala v. Albarran, 2026 WL 1179862, *3 (N.D. Cal. 2026) (rejecting respondents' jurisdiction argument in light of "their own pattern of escalating measures taken with respect to [petitioner], including their repeated refusal to provide assurances that he will not be detained").

II.    LIKELIHOOD OF SUCCESS ON THE MERITS.[2]

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 2500 (2001).  "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673, 145 S.Ct. 1003, 1006 (2025) (internal quotation marks omitted).  Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003), due process "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990) (emphasis in original).

Petitioner's procedural due process claim involves two steps:  "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Fernandez Lopez v. Wofford, 2025 WL 2959319, *3 (E.D. Cal. 2025) (internal quotation marks omitted).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972).  To determine what protections due process demands in a given situation, courts consider the:  (1) private interest that will be affected by the official action; (2) risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards; and (3) government's interest, including the function involved and the burdens that would be

---

[2] Respondents' Opp. does not address the merits of petitioner's claims. (See, generally, Dkt. 14, Opp.).  As the court cautioned in its prior order, "[f]ailure to address each argument/claim raised in the Motion and/or Petition may be treated as respondents conceding the merits of petitioner's argument/claim and/or that petitioner is entitled to the relief sought." (Dkt. 9, Court's Order of May 11, 2026, at 1).

6

imposed by additional process.  See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

A.      Petitioner Possesses a Protected Liberty Interest.

Here, petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment." Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020); Zadvydas v. Davis, 533 U.S. 678, 690, 121 S.Ct. 2491, 2499 (2001) ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects.").  While "the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the . . . conditions of release." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) (internal quotation marks and alterations omitted). Accordingly, "[c]ourts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond." He v. Lyons, 2026 WL 280074, *3 (N.D. Cal. 2026).  In short, petitioner has a protected liberty interest in remaining out of custody absent a showing that she poses a risk of flight or danger.  See, e.g., Meneses v. Santacruz, 811 F.Supp.3d 1158, 1163 (C.D. Cal. 2025) (finding petitioner who was released pursuant to an Order of Supervision had a constitutionally protected liberty interest in remaining out of ICE custody); Karangolian v. Marin, 2026 WL 1082312, *2 (C.D. Cal. 2026) (same); Espinoza v. Kaiser, 2025 WL 2675785, *10-11 (E.D. Cal. 2025) (finding that petitioners released from immigration detention on their own recognizance had "substantial private interests in being out of custody"); Noori v. Larose, 807 F.Supp.3d 1146, 1157, 1164 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

B.      Risk of Erroneous Deprivation is High.

Under the circumstances here, due process requires that respondents provide petitioner with notice and a pre-deprivation bond hearing prior to any attempt to revoke her Order of Supervision.  See, e.g., Ramirez Tesara v. Wamsley, 800 F.Supp.3d 1130, 1137 (W.D. Wash.

2025) (granting TRO and ordering that petitioner, who was re-detained months after the expiration of his parole, "should be released and only re-detained after a hearing [in] front of an immigration judge"); Valdez v. Joyce, 803 F.Supp.3d 213, 219 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted).  Respondents fail to address this factor in their Opp. (See, generally, Dkt. 14, Opp.).  Further, there is no evidence, nor even a suggestion, that respondents would employ any procedural safeguards before detaining petitioner.  (See, generally, id.).  This is especially apparent given the unexpected check-in – with just a few hours notice – that petitioner was required to attend as well as the vague explanation that there had been a "change in ICE's system" when petitioner's ISAP monitoring conditions were increased. (See Dkt. 1, Petition at ¶ 41); (Dkt. 10, Beaty Decl. at ¶ 9).  In short, the court finds that the risk of an erroneous deprivation of petitioner's liberty interest is high.  See, e.g., Fernandez Lopez, 2025 WL 2959319, at *6 ("[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing.") (internal quotation marks omitted); Escobar Salgado v. Mattos, et al., 2025 WL 3205356, *24 (D. Nev. 2025) ("The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion.").

       C.     Respondents' Interest Does Not Outweigh the First Two Factors.

"As to the third and final Mathews prong, the Attorney General's discretion to detain individuals . . . is valid where it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community."  J.U. v. Maldonado, 805 F.Supp.3d 482, 498 (E.D.N.Y. 2025) (internal quotation marks and alterations omitted).  Again, respondents fail to address this factor in their Opp. (See, generally, Dkt. 14, Opp.).  In any event, "the government points to no new facts that would undermine its prior determination that [petitioner] presents no risk of danger to the community."

8

Sun, 2025 WL 2730235, at *6. Indeed, petitioner appears to have complied with all the conditions of her Order of Supervision, including all reporting requirements, (see Dkt. 1, Petition at ¶ 40), and there is nothing in the record to establish that petitioner poses a flight risk or a danger to the community.

In short, because each of the Mathews factors favors petitioner, the court finds that she has shown a likelihood of success on the merits of her procedural due process claim.[3]

III.   LIKELIHOOD OF IRREPARABLE HARM.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). Here, there is no doubt that petitioner's "imminent check-in appointment[s], and ICE's failure to provide any assurance that it will not re-detain her at th[ose] appointment[s], clearly establish a risk of irreparable harm[.]" Sun, 2025 WL 2730235, *7; (see also Dkt. 15, Reply at 5-6) (noting the U.S. Attorney's Office "was unable to provide assurances that ICE would not re-detain" petitioner).

IV.   BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

The final two merged factors likewise weigh heavily in favor of petitioner. Although the government has a compelling interest in the enforcement of its immigration laws, that interest cannot justify the violation of petitioner's constitutional rights. See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent

---

[3] In the interest of judicial economy, and because the court grants petitioner's requested relief on procedural due process grounds, it need not reach petitioner's remaining claims for relief.

the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws[,] . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's PI Motion **(Document No. 2)** is **granted** as set forth in this Order.

2. Respondents shall relieve petitioner of the ankle monitor and increased check-ins that were imposed on May 11, 2026.  Respondents shall not impose any release restrictions (e.g., electronic monitoring) on petitioner unless deemed necessary at a future pre-deprivation bond hearing.

3. Respondents shall file with the court a Notice of Compliance within three (3) calendar days following the filing date of this Order confirming that petitioner has been relieved of the ankle monitor and increased check-ins and that no additional release restrictions have been imposed.

4. Respondents shall not re-detain petitioner during the pendency of these proceedings without providing petitioner with, at minimum, individualized notice describing the change in circumstances necessitating her arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge.  Petitioner shall not be detained unless respondents demonstrate at the pre-deprivation hearing that petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community.  If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5. The parties shall meet and confer no later than **July 6, 2026**, to discuss what, if anything, remains to be done with respect to the Petition (Dkt. 1).

6.  Should the parties agree there is nothing further for the court to decide, they shall, no later than **July 8, 2026**, file a stipulation and proposed order either dismissing the case or granting the Petition and the entering of judgment,.

7.  If the parties disagree as to whether anything remains to be decided with respect to the Petition, then the parties shall file a joint status report.  The status report shall, at a minimum, include the parties' positions on the following:  (1) what issues remain for decision; (2) with respect to each issue, whether both parties intend to stand on briefing already filed, and if so, pointing the court to the specific docket entries and page numbers that provide the relevant briefing on each of the issues that remain; (3) if either party believes further briefing is necessary, proposing a schedule for such briefing and lodging a proposed briefing order; and (4) whether the parties agree to consent to the assigned Magistrate Judge for all purposes.[4]  **If mootness is one of the issues that remain for decision, the parties shall address the issue in the joint status report.**  The parties' joint status report shall be filed no later than **July 8, 2026**.  Failure to file a stipulation or a joint status report by the deadlines set forth above may be deemed as a concession that no further relief is available and that the action may be dismissed without prejudice.

Dated this 29th day of June, 2026.

/s/
Fernando M. Olguin
United States District Judge

---

[4]  If the parties consent to the assigned Magistrate Judge, they may file a Consent to Magistrate Judge (form CV-11D) in lieu of a joint status report by the above deadline.